UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------X
YINKELIN ADAMES, et al.,

                      Plaintiffs,

       - against -

UNITED STATES OF AMERICA,

                      Defendant.
-------------------------------------------------X

**MEMORANDUM AND O R D E R**

06 CV 3922 (CLP)

On August 14, 2006, plaintiffs Yinkelin Adames and Christina Adames commenced this action against the United States of America, pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1291, 1346(b), 1402, 2401, 2402, 2671-80, seeking damages for injuries sustained in a motor vehicle accident that occurred on April 21, 2004, when the car driven by Yinkelin Adames came into contact with a United States Postal Service truck driven by Enrique Morris.

On January 29, 2009, the parties consented to trial before the undersigned. Based on the evidence presented at trial, this Court makes the following findings of fact and conclusions of law.

## FACTUAL FINDINGS[1]

On April 21, 2004, at approximately 2:30 to 2:45 p.m., plaintiff Yinkelan Adames was driving his car in an easterly direction on Castleton Avenue in Staten Island, accompanied by his

---

[1]The parties did not stipulate to any facts in their Joint Pre-Trial Order, filed on May 26, 2009.

wife Christina Adames,[2] and their son Jim Kelly Adames, when his car came into contact with a United States Postal Service truck (the "Postal truck"). (Tr.[3] at 11, 32). The parties agree that the accident occurred in the vicinity of 585 Castleton Avenue. (Id. at 11, 14). Castleton Avenue, which runs in an east-west direction, is a two-way street, divided by a double yellow line, with one lane of traffic and one lane of parking in each direction. (Id. at 14, 24).

The parties, however, sharply disagree as to what occurred immediately prior to the contact between the two vehicles. According to Mr. Adames, just prior to the accident, he and his family were on their way to pick up his step-son at school; his wife was seated in the front passenger seat, and their son was in a child seat behind the driver. (Id. at 11, 27-28). Mr. Adames testified that he was driving in an easterly direction at a speed of approximately 15 to 20 miles per hour, when his vehicle was struck by a Postal truck that he had observed stopped or parked on the right-hand side of the street. (Id. at 13-16). According to plaintiff, he first observed the Postal truck when he was approximately 40 to 50 feet past the intersection where the school was located. (Id. at 25). At the time that he first observed the Postal truck, it was parked on the right-hand side of the street, very close to the dividing line between the parking and driving lanes because the Postal truck is wider than the average car. (Id. at 15). When Mr. Adames initially saw the Postal truck, he did not see the driver, "so [Mr. Adames] figured that he was delivering the mail." (Id. at 16).

Mr. Adames first realized that his car had been struck by another vehicle when he heard the

---

[2]Since the time of the accident, the Adames have been divorced and Ms. Adames has resumed use of her maiden name, Christina O'Grady, and will be referred to as Ms. O'Grady herein.

[3]Citations to "Tr." refer to the transcript of the trial proceedings held on January 14, 2010.

sound of screeching metal as the Postal truck struck the passenger side of the Adames' car, pushing their car over the double yellow line down the center of Castleton Avenue. (Id. at 16-17, 19). According to Mr. Adames, at the time he was hit, his car was "right next to" the Postal truck; he never saw the truck come into contact with his car. (Id. at 18). According to Mr. Adames, the Postal truck just "sp[u]n out" of the parking space and struck his car "hard," pushing it into the other lane of traffic across the double yellow line. (Id. at 17, 19). Mr. Adames testified that the Postal truck struck his vehicle two or three times, first on the front right side and then in the back, near the rear tire on the passenger's side. (Id. at 20).

After being struck, Mr. Adames got out of the car and spoke to the Postal truck driver. (Id. at 21). Mr. Adames claims that the driver admitted that he had not seen the Adames' vehicle, stating: "'I'm sorry. I'm sorry. I didn't see you guys.'" (Id. at 22). According to Mr. Adames, his wife, who was in the car during this conversation, did not speak to the Postal truck driver. (Id.)

On cross-examination, Mr. Adames conceded that he was familiar with Castleton Avenue where the accident occurred, that there is only one driving lane in each direction, and that there were cars parked in the direction he was driving that morning. (Id. at 24). He also conceded that if a car was stopped in the driving lane, the only way to pass it would be to drive over the double yellow line. (Id.) Mr. Adames claimed that he never sped up and did not see another car behind the Postal truck waiting to move into the parking space. (Id. at 25-26). He did see a white car ahead of him in the distance; according to Mr. Adames, the white car was already past the Postal truck when he was approaching the truck from behind. (Id.) According to Mr. Adames, there were no other cars present between him and the Postal truck. (Id. at 26).

Christina O'Grady, formerly Christina Adames, testified that around "2:45, 2:30" on the

afternoon of the accident, she was a passenger in her husband's car with her son seated in the back in a car seat; they were on their way to pick up her other son and take him to her mother's house. (Id. at 27-28, 31-32). It was a brisk, but sunny day. (Id. at 32). According to Ms. O'Grady, as their car was proceeding on Castleton Avenue, approaching Hunter Place, she observed the Postal truck stopped against the curb; "[i]t looked like there was no one in the vehicle." (Id. at 30). Indeed, she testified that she did know that anyone was in the Postal truck until they were hit. (Id.) She also noticed another car much further down the street toward the medical center.[4] (Id. at 32).

Like Mr. Adames, Ms. O'Grady testified that she first felt the impact and then later saw the Postal truck, which she said looked as if it was going to either turn onto Hunter Place or make a U-turn. (Id.) She testified that the Postal truck came out of the parking spot "fast," "because the impact sent us into the opposite lane going almost up Hunter Place." (Id. at 33). She testified that her husband did not go over the double yellow line and that there was nothing blocking his lane of traffic. (Id.) She claimed that the only other vehicle was much further ahead, almost toward the traffic light. (Id.)

According to Ms. O'Grady, she felt a first impact on the front passenger tire, then a second impact on the passenger back door and a third impact toward the rear bumper. (Id. at 33-34). She described the impacts as "forceful," and explained that her vehicle ultimately came to rest on the corner of Hunter Place and Castleton Avenue, facing oncoming traffic. (Id. at 35). She testified that their car hit the light pole on the corner of Hunter Place and Castleton Avenue. (Id. at 36).

---

[4] When asked to identify the location of the accident, using a photograph of Castleton Avenue, Ms. O'Grady indicated that the point of impact was where a red car was depicted in the photograph (Tr. at 29-31; Def.'s Ex. A), which appears to be slightly farther down the street than the location identified by her husband and the other witnesses.

Following the impact, Ms. O'Grady turned to check on her son in the back seat and saw the Postal truck driver walking toward the Adames' car. (Id. at 36-37). Ms. O'Grady testified that the Postal truck driver had his hands in the air and as he was looking into the Adames' car, he said, "'oh, my God she has a child.'" (Id. at 37). He also said, "'I didn't see you. I didn't see you. There's a kid.'" (Id.) She described him as "extremely apologetic." (Id. at 38).

After the incident, according to Ms. O'Grady, a woman came out of one of the houses with a cordless phone to call the police. (Id.) The police arrived and both Ms. O'Grady and Mr. Adames were taken to the hospital. (Id. at 37).

On cross-examination, Ms. O'Grady reiterated that the white car she saw was already past the Postal truck when she first noticed the truck. (Id. at 42). She claimed that during the entire time they were driving up Castleton, she did not see the Postal truck move, nor did she even know that there was a driver there. (Id.) Yet she admitted that before the impact, she was concerned about the Postal truck, although she did not know why. (Id.) Ms. O'Grady denied that there was a car in the lane of traffic in front of the Adames' vehicle and denied that Mr. Adames drove across the double yellow line to get around another car. (Id. at 44).

Enrique Morris, a letter carrier for the Postal Service for 15 years, testified that typically his hours run from 7:30 a.m. to 4:00 p.m., during which time he delivers mail to various houses on his route. (Id. at 98). His usual route is from Castleton to Seabrook and he drives a long-life vehicle, or LLV truck. (Id. at 99).

On April 21, 2004, several employees were absent and Mr. Morris was asked to work one hour of overtime, which he began at 1:00 p.m. after delivering half of his regular route. (Id.) His overtime route that day was to cover the area on Castleton Avenue between Brighton and Hunter, a

route with which he had become familiar during the time that he first started with the Postal Service. (Id. at 100). On that day, Mr. Morris parked his Postal truck at 585 Castleton Avenue. (Id.) After delivering the mail, he went back to his truck, looked to his left and saw a car stopped behind him with its lights blinking. (Id. at 100-01). Mr. Morris thought the car was waiting for the parking space occupied by the Postal truck. (Id. at 103). Mr. Morris put on his seatbelt and turned on his engine, all while the other car sat there with its blinker on. (Id.)

Mr. Morris explained that when he pulled out, he was going toward Hunter Place because he had completed his overtime and was going for lunch. (Id. at 102). At that time, there was no room in the driving lane for traffic to continue because of the stopped car and he saw no other traffic behind the stopped car. (Id. at 103). Before pulling out, he activated his turn signal, looked to his left, and saw the stopped car still waiting. (Id.) Mr. Morris started to pull out when he felt a "very hard impact" on the left side of his truck. (Id. at 103-04). After Mr. Morris felt the impact, he was stunned because he was "hit so hard," and he got out of the truck. (Id. at 104). A young man then came up yelling at Mr. Morris, asking if the driver had not seen him. (Id. at 104-05). Mr. Morris said he had not seen the car and proceeded to call his supervisor, who arrived at the scene approximately 20 minutes later. (Id. at 105-06).

When told there was a car parked waiting to take his spot right before the accident, Mr. Morris' supervisor suggested that they ring the bell at 585 Castleton. (Id. at 106). At the second bell, a young lady indicated that her mother had witnessed the accident and would give a statement. (Id. at 106-07).

On cross-examination, Mr. Morris made it clear that there was nothing in front of him when he pulled out of the parking space, and that he pulled out "slow." (Id. at 111-12). Apart from the

6

car waiting for his space, Mr. Morris never saw any vehicles traveling in the direction in which he was proceeding, nor did he see any vehicles pass him. (Id. at 112). He testified that the vehicle that hit the Postal truck was "maybe dark" gray.[5] (Id. at 112-13).

Elizabeth O'Sullivan, the eyewitness identified by Mr. Morris and his supervisor, testified pursuant to a subpoena issued by the government. (Id. at 50). Ms. O'Sullivan testified that she lives at 585 Castleton Avenue, and has lived there for ten years. (Id.) She testified that she lives in the building directly adjacent to the area on Castleton Avenue where the accident occurred and she identified the building in Defendant's Exhibit E. (Id. at 51). She currently is employed by the New York City Board of Education where she works as a paraprofessional in a high school from 7:00 a.m. to 2:00 p.m., and then has a second job working as a cleaner at an intermediate school later in the afternoons. (Id.)

On April 21, 2004, Ms. O'Sullivan was returning home from work at her first job, driving down Castleton Avenue towards Hunter Place when she witnessed the accident. (Id. at 52). Specifically, she testified that she was stopped in the lane of traffic with her blinker on because she was waiting for the Postal truck to pull away from the curb and out of the space in which the truck was parked. (Id.) Noting that "[t]here's not a lot of parking spots," she wanted to pull into the spot being vacated by the Postal truck because it was directly in front of her house. (Id.) At the time, she was driving a silver 2003 Forester Subaru. (Id. at 54).

Ms. O'Sullivan testified that when she turned on her blinker, she was stopped in the driving lane next to a car that was parked directly behind the Postal truck. (Id. at 55-56). At that time,

---

[5]It should be noted that the eyewitness, Ms. O'Sullivan, also testified that the vehicle that hit the Postal truck was a "dark sedan." (Tr. at 83).

there was no traffic she could recall either in front of her or behind her. (Id. at 54). However, at some point, as Ms. O'Sullivan was looking in her rear and side view mirrors, she saw a car coming up from behind her, "moving quickly." (Id.) Ms. O'Sullivan testified that the car "had gone around me" and hit the Postal truck. (Id. at 54-55). That the car went around her made Ms. O'Sullivan "annoyed" because, as she testified, "I guess . . . I'm more patient. I don't know." (Id.)

According to Ms. O'Sullivan, as the car was coming up behind her, the Postal truck was pulling out of the spot and making a left turn as if it was turning onto Hunter Place. (Id.) In her rear and side view mirrors, she saw the car come alongside the left side of her vehicle where it "just slammed right into the left side of the Postal truck." (Id. at 57). She parked her car in the space vacated by the Postal truck and watched as both drivers got out of their vehicles. (Id. at 53-57).

On cross-examination, counsel for plaintiffs questioned Ms. O'Sullivan as to whether she knew the driver of the Postal truck, but she denied knowing him. (Id. at 58). Indeed, as the Postal truck driver testified, this was not his regular route. (Id. at 99). Ms. O'Sullivan also testified that the Postal truck was parked against the curb and was not blocking the other lane of traffic. (Id. at 58-59). She explained that she was stopped for maybe ten seconds with her blinker on while she waited for the truck to pull out. (Id.) While she was waiting, she was blocking the road and the other car went around her to her left over the double yellow line. (Id. at 60-61). She testified definitively that the "car hit the Postal truck." (Id. at 64).

## DISCUSSION

A. <u>Legal Standard</u>

Plaintiffs' claim was brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 1346(b), which provides that tort liability for an accident based on the alleged negligence of an employee of the United States is governed by the laws of the state where the accident occurred – in this case, New York. See Richards v. United States, 369 U.S. 1, 11 (1962); Makarova v. United States, 201 F.3d 110, 114 (2d Cir. 2000). Under New York law, a party must establish three elements in order to prevail on a negligence claim: 1) that defendant owed plaintiff a duty of care; 2) that defendant breached that duty; and 3) that the breach was the proximate cause of plaintiffs' injuries. See, e.g., Lombard v. Booz-Allen & Hamilton, Inc., 280 F.3d 209, 215 (2d Cir. 2002). New York follows the common law rule that a violation of a statute constitutes negligence per se. See, e.g., Clarke v. Condon, 52 A.D.3d 764, 765, 862 N.Y.S. 65, 65-66 (2d Dep't 2008).

Under New York's Vehicle and Traffic Law, it is the duty of all drivers to operate their automobiles with reasonable care, taking into account the actual and potential dangers existing from weather, road, traffic and other conditions. See, e.g., N.Y. Veh. & Traf. Law § 1180(a); Goldstein v. United States, 9 F. Supp. 2d 175, 186-87 (E.D.N.Y. 1998); Baker v. Close, 204 N.Y. 92, 94, 97 N.E. 501, 501 (1912); Oberman v. Alexander's Rent-A-Car, 56 A.D.2d 814, 814, 392 N.Y.S.2d 662, 663-64 (1st Dep't 1977). All drivers are under a duty: 1) to maintain a reasonably safe rate of speed; 2) to have their automobiles under reasonable control; 3) to keep a proper lookout, under the circumstances then existing, to see and be aware of what was in their view; and 4) to use reasonable care to avoid an accident. See, e.g., Hyowon Kim v. Cruz, No. 08 CV 8905, 2009 WL 5103157, at *2 (S.D.N.Y. Dec. 17, 2009); Goldstein v. United States, 9 F. Supp. 2d at

186; see also Baker v. Close, 204 N.Y. at 94, 97 N.E. at 501; Oberman v. Alexander's Rent-A-Car, 56 A.D.2d at 815, 392 N.Y.S.2d at 663.

Furthermore, Section 1126(a) of the Vehicle and Traffic Law makes it unlawful to pass on the left side of a double yellow line. See N.Y. Veh. & Traf. Law § 1126(a); Clarke v. Condon, 52 A.D.3d at 765, 862 N.Y.S. at 65-66. Thus, under New York law, a violation of this statute raises a presumption of negligence. See, e.g., Palacios v. Aris, Inc., No. 08 CV 746, 2010 WL 933754, at *11 (E.D.N.Y. Mar. 11, 2010); Cenovski v. Lee, 226 A.D.2d 424, 424, 698 N.Y.S. 868, 868-69 (2d Dep't 1999).

B. Analysis

In this case, plaintiffs argue that Mr. Morris, a Postal Service employee, was negligent in that he made a left turn into traffic out of his parking spot without keeping a proper lookout for the Adames' vehicle as it was driving down Castleton Avenue. Defendant contends that Mr. Morris was not negligent and that plaintiff Yenkelin Adames was responsible for causing the accident when he drove across the double yellow line in an effort to pass Ms. O'Sullivan's vehicle, which was waiting for the Postal truck to pull out of the parking space.

In examining the evidence and considering the testimony of the witnesses, the Court credits the testimony of Ms. O'Sullivan. As a disinterested witness, she has no stake in the outcome of this proceeding and no motive to falsify her testimony. See United States v. Marino, 129 F. Supp. 2d 202, 213 (E.D.N.Y. 2001). Ms. O'Sullivan clearly and unequivocally testified that she was blocking the eastbound lane of traffic waiting for the Postal truck to vacate a parking space that was conveniently located in front of her residence. (Tr. at 55-56). She witnessed the plaintiffs'

vehicle come up from behind her quickly, and pass her on her left (id. at 54-57), a maneuver that required the plaintiffs' car to cross the double yellow line into oncoming westbound traffic in violation of Vehicle and Traffic Law § 1126(a).

The parties do not dispute that Castleton Avenue has two lanes in either direction; thus, if, as Ms. O'Sullivan testified, cars were parked alongside the curb behind the Postal truck, Ms. O'Sullivan would be required to stop in the traffic lane while she waited to pull into the spot being vacated by the Postal truck. It follows that the only way for plaintiffs to get around Ms. O'Sullivan would have been to cross the double yellow line in violation of New York law. See N.Y. Veh. & Traf. Law § 1126(a). Ms. O'Sullivan's testimony was corroborated by that of the Postal truck driver to the extent that he testified that Ms. O'Sullivan was stopped in the lane of traffic behind his truck waiting for him to pull out; indeed, after the accident, the driver and his supervisor were able to identify Ms. O'Sullivan by knocking on the doors of the building in front of which she had parked her car. (Tr. at 106-07).

In order for the Court to find for plaintiffs in this case, the Court would have to find that Ms. O'Sullivan was never present on Castleton Avenue that day, or that she was not waiting for the parking spot being vacated by the Postal truck. Although both Mr. Adames and Ms. O'Grady testified that they never saw Ms. O'Sullivan's car and that her car was not stopped waiting for the Postal truck to pull out, to credit their testimony would require the Court to find that the entire testimony of Ms. O'Sullivan, a disinterested witness, was a complete fabrication.

Instead, it appears from the record at trial that plaintiffs were impatient and did not want to wait the time necessary for the Postal truck to pull out of the parking space. In attempting to pass Ms. O'Sullivan, who was waiting behind the Postal truck to enter the parking space being vacated

11

by the Postal truck. Mr. Adames negligently crossed the double yellow line on Castleton Avenue in violation of Vehicle and Traffic Law § 1126(a), striking the Postal truck. Mr. Morris had no warning of the approaching car and could not reasonably have foreseen that plaintiffs would be passing the stopped car on its left. See Cenovski v. Lee, 266 A.D.2d at 424, 698 N.Y.S. at 869 (noting that a driver is "entitled to anticipate" that other motorists will obey the traffic laws).

## CONCLUSION

For the reasons stated above, and based on the evidence presented at trial, the Court finds in favor of defendant and Orders judgment in favor of defendant.

The Clerk is directed to send copies of this Order to the parties either electronically through the Electronic Case Filing System (ECF) or by mail.

**SO ORDERED.**

Dated: Brooklyn, New York
April 21, 2010

Cheryl L. Pollak
U.S. Magistrate Judge
Eastern District of New York